# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Jane Doe 202a, | C/A No. 2:16-cv-00530-RMG-MGB |
| PLAINTIFF, | |
| vs. | Report & Recommendation |
| Al Cannon, Sheriff of Charleston County, individually and in his official capacity, et al. | |
| DEFENDANTS. | |

The Plaintiff, through counsel, brings this action for violations of her constitutional rights and under state law against Al Cannon, Sheriff of Charleston County, along with several deputy sheriffs[1]; Sandra J. Senn; and Senn Legal, LLC. Before the court is the CCSO Defendants' Motion for Partial Judgment on the Pleadings. (Dkt. No. 103.) The Plaintiff filed her Opposition on September 20, 2017. (Dkt. No. 108.) The CCSO Defendants replied on September 27, 2017. (Dkt. No. 111.) All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. This court recommends that the CCSO Defendants' Motion for Partial Judgment on the Pleadings (Dkt. No. 103) be granted.

## Relevant Alleged Facts

The Plaintiff alleged that in March of 2014 she was wrongfully arrested in her home for assaulting a police officer in violation of a North Charleston City Ordinance. (Dkt. No. 85 ¶ 20.)

---

[1] These Defendants are Sheriff Al Cannon, Kathryn Farmer, Thomasina Dyer, Andrew T. Grant, Lindsay Fickett, Brandon Calvert, Patrice Washington, Tracey Mathewes, Steven Durbin, Bernard Keyes, Michael Tice, Willis L. Beatty, Christopher McLauchlan, and Michael A. Walters (collectively, the "CCSO Defendants").

1

The Plaintiff was then booked into the Charleston County Detention Center ("the jail") under the custody of the Sheriff as a result of her arrest. (*Id.* ¶¶ 21, 25.) After the Plaintiff was booked into the jail, the arresting officer reduced the charge against her to simple assault, which she alleged was still false. (*Id.* ¶ 25.) The Plaintiff alleged that the Sheriff's policy and practice at the jail is to retaliate against individuals charged with assaulting a police officer or who ask to speak to a lawyer. (*Id.* ¶¶ 26, 27, 30.)

The Plaintiff was kept in the jail for a total of 17 hours and 15 minutes. (Dkt. No. 85 ¶ 32.) During that time, the Plaintiff alleged that many of her constitutional rights were violated by the Defendant jail staff, under the supervision of the Sheriff. The Plaintiff alleged that the jail staff worked in a conspiracy to deny the Plaintiff her constitutional rights. The Plaintiff alleged that she was denied access to a lawyer and was not allowed to contact anyone to inform them she was in jail. (*Id.* ¶ 34.) She alleged that her constitutional rights were violated when various jail Defendants: (1) improperly demanded to strip search her (*Id.* ¶ 41); (2) refused to tell her why she was arrested and then told her a false reason (*Id.* ¶ 50, 52); (3) assaulted her and then hid evidence of the assault (*Id.* ¶ 59); (4) mischaracterized her conduct following the assault (*Id.* ¶ 137); (5) falsely claimed she was intoxicated (*Id.* ¶ 170); (6) placed her in a restraint chair (*Id.* ¶ 172); (7) sexually degraded her by putting her on display (*Id.* ¶ 184); (8) improperly tased her (*Id.* ¶ 189); (9) improperly strip searched her (*Id.* ¶ 210); and (10) intentionally gave her a man's jail uniform to degrade her (*Id.* ¶ 212).

The Plaintiff alleged that "for each year not later than 2008," the Sheriff has failed to properly train Defendants Farmer, Dyer, Fickett, Walters, McLauchlan, and Calvert," all of whom are his deputies. (Dkt. No. 85 ¶ 317.) The Plaintiff alleged that the Sheriff failed to properly review Defendants Grant Mathewes, Durbin, Keyes, Tice, and Beatty", all of whom are

his deputies, over the same time period. (*Id.*) The Plaintiff alleged that the Sheriff failed to train deputies in the following areas:

> (a) a detainee's right to make "at least two" telephone calls during intake including a call to her lawyer, (b) a detainee's right to not be battered by a deputy, (c) that a deputy should not agree to delete evidence of another deputy's battery on a detainee, (d) that a deputy should not agree to not report a battery committed by another deputy in his or her presence, (e) that the restraints on Jane Doe did not permit a Taser to be used against her when she posed no danger of escape or serious bodily harm to a deputy, and (f) that a detainee may not be retaliated against based on either the charge against her or for demanding her rights.

(Dkt. No. 85 ¶ 320.)

The Plaintiff alleged that the Sheriff was grossly negligent for the conduct of his deputies, but not under a theory of *respondeat superior*. (Dkt. No. 85 ¶ 337.) The Plaintiff alleged a total of "62 separate occurrence[es] of gross negligence by [the Sheriff's] deputies as to [the Plaintiff]." (*Id.* ¶ 345.) The Plaintiff did not specifically allege any other legal theory that would impute liability on the Sheriff for his subordinates' acts of gross negligence other than *respondeat superior*.

The Plaintiff alleged that the Sheriff was liable for the defamatory statements of deputies Dyer, Fickett, and Washington. (Dkt. No. 85 ¶¶ 349-364.) The Plaintiff "presumes that deputies Dyer, Fickett, and Patrice Washington acted in their representative official capacities." (*Id.* ¶ 350.) The Plaintiff alleged that the defamatory statements occurred on March 27-28, 2014. (*Id.* ¶¶ 349-364.) The alleged defamatory statements included statements regarding the Plaintiff's treatment of her mother and her state of intoxication. (*Id.*) The Plaintiff alleged that her mother was hospitalized at MUSC following the Plaintiff's stay in the jail. (*Id.* ¶ 358.) The Plaintiff alleged that she "was obligated to report to MUSC the false statements by Dyer and Washington claiming

that [the Plaintiff] abused her own mother" which prevented her from having access to her mother. (*Id*. ¶ 359.)

### **Standard of Review**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment on the pleadings after the pleadings are closed. A motion for judgment on the pleadings should be granted when, viewing the facts in the light most favorable to the non-moving party, there remain no genuine issues of material fact, and the case can be decided as a matter of law. *Tollison v. B & J Machinery Co.*, 812 F. Supp. 618, 619 (D.S.C. 1993). In considering a motion for judgment on the pleadings, the court applies the same standard as for motions made pursuant to Rule 12(b)(6). *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009). However, the court may also consider a defendant's answer. *See Massey v. Ojaniit*, 759 F.3d 343, 347 (4th Cir. 2014); *see also Void v. Orangeburg Cty. Disabilities & Special Needs Bd.*, No. 5:14-cv-02157-JMC, 2015 WL 404247, at *2 n.1 (D.S.C. Jan. 29, 2015).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the facts alleged on the face of the plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. *Id.* When considering a motion to dismiss, the court must accept as true all of the factual

allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court "may also consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

## Analysis

The CCSO Defendants move for judgment on the pleadings arguing that the Eleventh Amendment bars the Plaintiff's claims against the Sheriff in the fourth, seventh, and ninth causes of action and that the Plaintiff's eighth cause of action for declaratory relief is improper as it seeks retrospective declaratory relief.[2] (Dkt. No. 103.) The Plaintiff argues that the Sheriff is not a state official for purposes of the Eleventh Amendment and that the declaratory relief sought is not retrospective. (Dkt. No. 108.)

**1. Eleventh Amendment Immunity**

The CCSO Defendants argue that the Sheriff is immune from suit under the Eleventh Amendment as to the Plaintiff's fourth, seventh, and ninth causes of action. (Dkt. No. 103.) The Plaintiff's fourth, seventh, and ninth causes of action are state law claims for gross negligence and defamation brought against the Sheriff in his official capacity. (Dkt. No. 85 ¶¶ 316, 337, 349.) These claims are brought under this court's pendant jurisdiction. *See Siler v. Louisville & Nashville R. Co.*, 213 U.S. 175 (1909) (holding that where a state law claim arises from the same

---

[2] The CCSO Defendants move for judgment on the pleadings on the Plaintiff's twelfth cause of action, civil conspiracy, as well. (Dkt. No. 103.) The court does not address the Plaintiff's allegations in the twelfth cause of action because the Plaintiff specifically stated in her response to the motion that the cause of action is not brought against any CCSO Defendant. (Dkt. No. 108 at 4.) Therefore, this court recommends that the CCSO Defendants' Motion for Partial Judgment on the Pleadings (Dkt. No. 103) be found to be moot as to the twelfth cause of action.

set of facts as a federal law claim, the federal court may exercise pendant jurisdiction over the state law claim).

Under the Eleventh Amendment, a federal court has jurisdiction to hear a claim against a state, a state's agencies, and state employees acting within their official capacity, only to the extent that either the state has expressly waived immunity or Congress has successfully abrogated that immunity. *Hans v. Louisiana*, 134 U.S. 1 (1890) (holding that the Eleventh Amendment bars suits against a state by its own citizens); *see Florida Dept. of Health & Rehabilitative Servs. v. Florida Nursing Home Assn.*, 450 U.S. 147 (1981) (asserting that an agency of state government is a part of the state for purposes of the Eleventh Amendment). In South Carolina, the South Carolina Tort Claims Act ("the Act") mandates that the "State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages…." S.C. Code § 15-78-40. The Act requires that any claims must be brought in the state courts of South Carolina. *See* S.C. Code § 15–78–20(e) (providing that the State of South Carolina does not waive Eleventh Amendment immunity, consents to suit only in a court of the State of South Carolina, and does not consent to suit in a federal court or in a court of another state); *Meyer v. Miro*, 2003 WL 23198856, at *12 (D.S.C. Feb. 12, 2003). The Act is the exclusive remedy for any tort committed by an employee of a governmental entity and governs all tort claims against governmental entities. S.C. Code Ann. § 15-78-70; *Hawkins v. City of Greenville*, 358 S.C. 280, 292, 594 S.E.2d 557, 563 (Ct. App. 2004) (citing *Flateau v. Harrelson,* 355 S.C. 197, 203, 584 S.E.2d 413, 416 (Ct. App.2003)).

The case at bar was brought in federal court on February 22, 2016. (Dkt. No. 1.) The Plaintiff's fourth, seventh, and ninth causes of action are state law claims brought against the Sheriff in his official capacity. (Dkt. No. 85 ¶¶ 316, 337, 349.) The Fourth Circuit and courts within this district have long held that sheriffs in South Carolina are state officials for purposes of Eleventh Amendment immunity. *See Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (citing *Gulledge v. Smart, 691 F.Supp. 947 (D.S.C.1988)*, aff'd mem., 878 F.2d 379 (4th Cir.1989)); *see also Edwards v. Lexington Cnty. Sheriff's Dep't*, 386 S.C. 285, 287 n. 1, 688 S.E.2d 125, 127 n. 1 (2010) ("[U]nder South Carolina law, the sheriff and sheriff's deputies are State, not county, employees.")(citations omitted). Courts within this district have specifically held that "Sheriff Cannon, in his official capacity, is immune from suit under the Eleventh Amendment." *McCants v. Charleston Cty. Sheriff Office*, No. 2:12-cv-3194-RMG, 2012 WL 6568436, at *1 (D.S.C. Dec. 17, 2012) (citiation omitted).

The Plaintiff argues that *Cromer* is no longer valid because the Fourth Circuit "first set out, in 2005, the criteria by which the federal courts would analyze whether an official was an 'arm of the state.'" (Dkt. No. 108 at 2.) The Plaintiff points to three Fourth Circuit cases to argue that *Cromer* is no longer good law and that sheriffs in South Carolina are not arms of the state.[3] The Plaintiff argues that *Maryland Stadium Authority v. Ellerbe Becket Inc.*, 407 F.3d 255 (4th Cir. 2005); *S.C. Dept. of Disabilities and Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300 (4th Cir. 2008); and *Lawson v. Union Cty. Clerk of Court*, 828 F.3d 239 (4th Cir. 2016), as

---

[3] The Plaintiff's argument is titled "The Sheriff is not a state official for purposes of 42 U.S.C. § 1983." (Dkt. No. 108 at 2.) The Plaintiff again argues that the Sheriff is not a state official under § 1983 in the body of her argument. This court has closely examined the Amended Complaint and the fourth, seventh, and ninth causes of actions cannot be construed as claims under § 1983. The Plaintiff's first, second, third, fifth, and sixth causes of action are brought under § 1983. The fourth, seventh, and ninth causes of actions, which are the subjects of the motion before the court, are **state law claims**, not § 1983 claims, brought against the Sheriff in his official capacity.

amended (July 8, 2016), set forth a new standard to determine whether a party is an arm of the state for purposes of the Eleventh Amendment. (Dkt. No. 108 at 2.) The *Lawson* court quoted *Hoover* providing following standard:

> To determine whether an entity is an arm of the state, we consider four nonexclusive factors:
> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State [is] sufficiently close to make the entity an arm of the State.

*Lawson*, 828 F.3d at 250 (4th Cir. 2016), *as amended* (July 8, 2016) (quoting *Hoover Universal, Inc.*, 535 F.3d at 303). The *Hoover* court cited to *Maryland Stadium Authority* for the same four nonexclusive factors. *Hoover Universal, Inc.*, 535 F.3d at 303.

Contrary to the Plaintiff's argument, *Maryland Stadium Authority* was not the first case in the Fourth Circuit to establish a test for whether an entity was an arm of the state for purposes of the Eleventh Amendment. *Maryland Stadium Authority* and *Cromer* relied on the same bedrock of case law and are not contrary to one another. In 1987, the Fourth Circuit decided *Ram Ditta By & Through Ram Ditta v. Maryland Nat. Capital Park & Planning Comm'n*, 822 F.2d 456 (4th Cir. 1987). In *Ram Ditta*, the Fourth Circuit stated the following:

> While many factors must be considered in determining whether an entity is the alter ego of the state, it is generally held that the most important consideration is whether the state treasury will be responsible for paying any judgment that might be awarded. We agree that this is a most important consideration for "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest." Other important inquiries underlying our consideration of eleventh amendment immunity include, but are not necessarily limited to, whether the entity exercises a significant degree of autonomy from the state, whether it is involved with local versus statewide concerns, and how it is treated as a matter of state law.

*Ram Ditta*, 822 F.2d at 457-58 (citations omitted). The four factor test stated in *Lawson* and that the Plaintiff argues originated in *Maryland Stadium Authority* actually originated in *Ram Ditta*. *Maryland Stadium Auth.*, 407 F.3d at 261 ("Typically, we apply a four factor test, first announced in *Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n,* 822 F.2d 456 (4th Cir.1987), to determine whether a governmental entity is an "arm of the state" under the Eleventh Amendment.") *Maryland Stadium Authority* applied *Ram Ditta*. It did not establish a new test.

*Cromer* primarily cited *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir.1995), in stating what factors were to be considered in determining if sheriffs in South Carolina were arms of the state. *Cromer*, 88 F.3d at 1331-32. The *Cromer* court's analysis was as follows:

> The Eleventh Amendment bars suits in federal courts for money damages against an "unconsenting State." *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). This immunity extends to "arm[s] of the State," *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 573, 50 L.Ed.2d 471 (1977), including state agencies and state officers acting in their official capacity. *Gray v. Laws,* 51 F.3d 426, 430 (4th Cir.1995). The "largely, if not wholly, dispositive" factor in determining whether an entity is properly characterized as an arm of the state is whether the state treasury will be liable for the judgment. *Id.* at 433; *see also Bockes v. Fields,* 999 F.2d 788, 790–91 (4th Cir.1993), *cert. denied,* 510 U.S. 1092, 114 S.Ct. 922, 127 L.Ed.2d 216 (1994). If the state's treasury will not be affected by the judgment, we consider other factors, "chief among which are whether the suit will jeopardize 'the integrity retained by [the] State in our federal system' and whether the state possesses such control over the entity claiming Eleventh Amendment immunity that it can legitimately be considered an 'arm of the state.' " *Gray,* 51 F.3d at 434 (quoting *Hess v. Port Auth. Trans–Hudson Corp.,* ––– U.S. ––––, ––––, 115 S.Ct. 394, 400, 130 L.Ed.2d 245 (1994)) (internal citation omitted).

*Cromer*, 88 F.3d at 1332.

In *Gray*, the Fourth Circuit discussed the interplay between *Ram Ditta* and *Hess v. Port Auth. Trans-Hudson Corp.,* 513 U.S. 30 (1994). The Fourth Circuit held the following in *Gray*: "In the end, we do not believe that *Hess,* as it applies to single state entities, materially altered the Eleventh Amendment analysis we formulated in *Ram Ditta*…." *Gray*, 51 F.3d at 434.

Therefore, *Cromer* expressly relied on *Gray*, which expressly relied on *Ram Ditta*. *Maryland Stadium Authority* expressly relied on *Ram Ditta* as well. The Plaintiff's argument that *Maryland Stadium Authority* implicitly overruled *Cromer* is wrong.

This court's conclusion that *Cromer* is still valid precedent after *Maryland Stadium Authority*, *Hoover*, and *Lawson* is supported by case law. *Cromer* is regularly cited by courts in this district for the proposition that a sheriff in South Carolina is an arm of the state and immune from suit under the Eleventh Amendment. *Clark v. Horry Cty. S.C. Sheriff's Office*, No. 9:17-cv-0742-MGL-BM, 2017 WL 4417715, at *2 (D.S.C. Sept. 13, 2017), *report and recommendation adopted,* No. 9:17-cv-00742-MGL, 2017 WL 4390717 (D.S.C. Oct. 3, 2017); *Billioni v. Bryant*, No. 0:14-cv-03060-JMC, 2015 WL 4928999, at *2 (D.S.C. Aug. 18, 2015); *Miller v. Colleton Cty. Sheriff's Office*, No. 1:15-cv-1253-SB, 2015 WL 2172681, at *1 (D.S.C. May 7, 2015); *Wirtz v. Oconee Cty. Sheriff's Dep't*, No. 8:13-cv 1041-RMG, 2013 WL 5372795, at *1 (D.S.C. Sept. 24, 2013). The undersigned concludes that the Sheriff is immune from suit under the Eleventh Amendment as to the fourth, seventh, and ninth causes of action. The Sheriff is being sued in his official capacity under state law, and the claims are brought in federal court. The State of South Carolina has not consented to such a claim. *See* S.C. Code § 15–78–20(e). The undersigned recommends that the CCSO Defendants' Motion be granted as to the fourth, seventh, and ninth causes of action.

### 2. **Declaratory Relief**

The CCSO Defendants argue that the Amended Complaint seeks improper retrospective declaratory relief. (Dkt. No. 103.) In her response, the Plaintiff clarified that she only seeks post-verdict declaratory relief under 42 U.S.C § 1983. (Dkt. No. 108.) The district court has already addressed this issue in this case when ruling on the CCSO Defendants' motion to dismiss the

original complaint. (Dkt. No. 78 at 3-4.) As held by the district court, because the "Plaintiff has represented that she is not seeking preliminary injunctive relief" the court "need not consider at this time whether post-verdict permanent injunctive relief may be appropriate [under 42 U.S.C. § 1983]." (*Id.*) This court recommends that the CCSO Defendants' motion be denied as the Plaintiff only seeks post-verdict permanent injunctive relief.

## **Conclusion**

Wherefore, it is **RECOMMENDED** that the CCSO Defendants' Motion for Partial Judgment on the Pleadings (Dkt. No. 103) be **GRANTED** as to the fourth, seventh, and ninth causes of actions, be **DENIED** as to the eighth cause of action, and be found to be **MOOT** as to the twelfth cause of action.

IT IS SO RECOMMENDED.

November 6, 2017

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).